# EXHIBIT 1

27-CV-23-4162

Filed in District Court
State of Minnesota
3/31/2023 11:13 AM

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                                    FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| JEFFREY BALOW,<br><br>    *Plaintiff,*<br><br>v.<br><br>MEDTRONIC USA, INC.,<br>710 Medtronic Parkway<br>Minneapolis, MN 55432,<br><br>Serve:<br><br>    Corporation Service Company,<br>    2345 Rice Street<br>    Suite 230<br>    Roseville, MN 55113–5603,<br><br>    *Defendant.* | SUMMONS |

This Summons is directed to **Medtronic USA, Inc.**

1.    **You are being sued.** The Plaintiff has started a lawsuit against you. The *Complaint* is attached to this *Summons*. Do not throw these papers away. They are official papers that start a lawsuit and affect your legal rights, even if nothing has been filed with the court and even if there is no court file number on this *Summons*.

2.    **You must BOTH reply, in writing, AND get a copy of your reply to the person/business who is suing you within 21 days to protect your rights.** Your reply is called an *Answer*. Getting your reply to the Plaintiff is called <u>service</u>. You must serve a copy of your *Answer or Answer and Counterclaim* (Answer) within 21 days from the date you received the *Summons* and *Complaint*.

3.    **You must respond to each claim.** The *Answer* is your written response to the Plaintiff's *Complaint*. In your *Answer*, you must state whether you agree or disagree with each paragraph of the *Complaint*. If you think the Plaintiff should not be given everything they asked for in the *Complaint*, you must say that in your *Answer*.

4.    SERVICE: **You may lose your case if you do not send a written response to the Plaintiff.** If you do not serve a written *Answer* within 21 days, you may lose this case by default.

You will not get to tell your side of the story. If you choose not to respond, the Plaintiff may be awarded everything they asked for in their *Complaint*. If you agree with the claims stated in the *Complaint*, you don't need to respond. A default judgment can than be entered against you for what the Plaintiff asked for in the *Complaint*.

To protect your rights, you must serve a copy of your *Answer* on the person who signed this *Summons* in person or by mail at this address:

> Halunen Law
> 1650 IDS Center
> 80 South Eighth Street
> Minneapolis, MN  55402

5. Carefully read the Instructions (CIV301) for the *Answer* for your next steps.

6. **Legal Assistance.** You may wish to get legal help from an attorney. If you do not have an attorney and would like legal help:

- Visit www.mncourts.gov/selfhelp and click on the "Legal Advice Clinics" tab to get more information about legal clinics in each Minnesota county.
- Court Administration may have information about places where you can get legal assistance.

**NOTE: Even if you cannot get legal help, you must still serve a written *Answer* to protect your rights or you may lose the case.**

7. **Alternative Dispute Resolution (ADR).** The parties may agree to or be ordered to participate in an ADR process under Rule 114 of the Minnesota Rules of Practice. You must still serve your written *Answer,* even if you expect to use ADR.

Dated: March 27, 2023

**HALUNEN LAW**

*/s/ Charles A. Horowitz*
Charles A. Horowitz, #0294767
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
horowitz@halunenlaw.com

R. Scott Oswald, *pro hac vice to be filed*
John T. Harrington, *pro hac vice to be filed*
The Employment Law Group, P.C.
1717 K St. NW, Ste. 1110
Washington, D.C. 20006
(202) 261-2806 (telephone)
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
tharrington@employmentlawgroup.com

***ATTORNEYS FOR PLAINTIFF***

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

JEFFREY BALOW,

    *Plaintiff*,

v.

MEDTRONIC USA, INC.,
710 Medtronic Parkway
Minneapolis, MN 55432,

Serve:

    Corporation Service Company,
    2345 Rice Street
    Suite 230
    Roseville, MN 55113–5603,

    *Defendant.*

Court File No._____
Case Type: 7 - Employment

### CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Jeffrey Balow, by and through undersigned counsel, files this civil complaint and demand for a jury trial for violations of the Minnesota Human Rights Act, §§ 363A.01 *et seq.* (MHRA), the Minnesota Whistleblower Act, MINN. STAT. §§ 181.931–.937 (MWA), Virginia Human Rights Act, Va. Code Ann. § 2.2-3900 *et seq.* (VHRA), and the Virginia Whistleblower Protection Act, Va. Code Ann. § 40.1-27.3 (VWPA). These violations arise out of Defendant Medtronic USA, Inc.'s (Medtronic) unlawful discrimination against Balow because of his age and gender; and its unlawful retaliation against Balow under the MWA and VWPA for his protected reporting of violations of state laws.

1

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter because it is a civil action filed against an entity over which this Court has personal jurisdiction.

2. This Court has personal jurisdiction over Medtronic because Medtronic regularly and systematically conducts business in Hennepin County, Minnesota, specifically at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.

3. Venue is proper in this Court pursuant to MINN. STAT. § 542.09 as Hennepin County is where Medtronic is headquartered.

## PARTIES

4. Plaintiff Balow is a resident of the State of Maryland, and Medtronic hired Balow on or around April 6, 2012. Medtronic continues to employ Balow. Balow performs work for Medtronic in Virginia, Maryland, and the District of Columbia.

5. Defendant Medtronic USA, Inc. is a Minnesota corporation and has its operational headquarters at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Medtronic has additional locations across the United States and throughout the world, including Washington, D.C., Tennessee, Pennsylvania, and New York. Medtronic regularly conducts business in Virginia, Maryland, and Washington, D.C.

## FACTUAL ALLEGATIONS

6. Balow is male and 50 years old, and he began working as an Interventional Therapy Consultant 2 (ITC2) for Medtronic on or around April 6, 2012.

7. Balow sells equipment for kyphoplasty and vertebroplasty, and the equipment is used to treat spinal fractures due to osteoporosis or vertebrae fractures caused by cancer. The equipment used in OsteoCool procedures is very heavy, and it is physically demanding

transporting the equipment to and from hospitals. Further, ITC2s often work long hours and are constantly on call.

8.  Balow's territory and area of work spans Virginia, Maryland, and Washington, D.C. Balow is supervised by personnel based in Minneapolis, Minnesota and Memphis, Tennessee.

9.  Balow is one of the oldest ITC2s working for Medtronic.

10. Balow performed well for Medtronic. He developed and grew his territory to $2.6 million in 2018, which earned Balow Medtronic's President's Club honors. There are approximately 200 Medtronic employees throughout the United States who perform the same role as Balow, and only approximately nine earn President's Club honors.

11. In recognition of Balow's strong performance, Krista Harrison, Balow's supervisor at the time, informed Balow that he could hire an ITC1 to assist Balow in covering his territory. Harrison informed Balow that the territory he developed would remain his and that the hiring of an ITC1 was to allow Medtronic to cover simultaneous surgeries.

12. ITC2s' base salaries are lower than those of ITC1s but ITC2s earn higher commissions. ITC1s have a higher base salary and earn less commission.

13. Medtronic hired Angela Pan in or around August 2018 as an ITC1 to assist Balow with his territory. Pan is female and is approximately in her early 30s.

14. When Pan started as an ITC1, it was agreed that Balow and Pan would split their commissions, with Balow earning 86 percent and Pan earning 14 percent.

15. Soon after Radena Salmon (female, age 41) was promoted to Regional Sales Director, Pan began to frequently reference their relationship. Salmon is Balow's second line supervisor.

16. Pan and Salmon met each other through Medtronic's women's networking group.

17. Though Balow worked for Medtronic far longer than Pan, Balow had very few conversations or discussions with Salmon.

18. In or around December 2020, Pan began to handle her own kyphoplasty cases with National Spine and Pain Centers (NSPC).

19. In or around January 2021, Balow took a kyphoplasty case at NSPC. He learned that the NSPC staff expected Balow to set up and handle the equipment in a sterile environment during the procedure.

20. ITCs are not permitted to set up and handle equipment in a sterile environment during the procedure; this is unlawfully practicing medicine.

21. Balow discussed this with a doctor at NSPC, and the doctor then asked why Pan was setting up the equipment in a sterile environment and handling it during procedures.

22. Balow spoke directly to Pan and advised her that Medtronic employees setting up the equipment in a sterile environment and handling it during procedures was contrary to Medtronic policy and was illegal. Upon information and belief, Pan did not stop unlawfully practicing medicine.

23. In or around May 2021, Balow reported Pan's breach of Medtronic policy and unlawful practice of medicine to Harrison, but Harrison failed or refused to take action in response to Balow's complaint.

24. In or around May 2021, Harrison changed jobs, and Matt Amberg became Balow's first line supervisor.

25. On or around January 26, 2022, Balow had his performance review with Amberg over the phone. Amberg began the review by asking Balow, "How long are you planning to do

this work?" Amberg then asked Balow how Balow's wife's realty business was performing financially.

26. Amberg then told Balow that Medtronic was promoting Pan to ITC2, and that Balow's commission split was reduced to 70 percent, while Pan's commission split was increased to 30 percent.

27. The reduction in Balow's commission directly and negatively impacted Balow's salary.

28. Balow expressed surprise that Pan was given such a large promotion so quickly, and Amberg informed Balow that Amberg was also surprised, and that the promotion came as a directive from Salmon.

29. On or around May 2, 2022, Balow had a phone call with Amberg, and Amberg told Balow that Balow's territory was going to be split 50/50 with Pan, effective immediately.

30. The reduction in Balow's territory directly and negatively impacted Balow's salary.

31. On or around May 16, 2022, Balow engaged in protected activity when he submitted a written complaint to Carol Surface, Medtronic's chief human resource officer, and Ivan Fong, general counsel and senior vice president.

32. Balow again reported Pan's practice of handling equipment in a sterile environment, her unlawful practicing of medicine, and the discrimination that Balow faced due to his much younger female colleague receiving favorable treatment to Balow's detriment.

33. On or around May 23, 2022, Balow had a phone call with Jacqueline Perry-Smith, a Medtronic workplace investigator, to detail the facts underlying Balow's complaints.

34. However, Perry-Smith did not conduct an investigation into Balow's complaint,

5

and Balow contacted Surface's office on or around June 22, 2022, to inquire about the status of the investigation into his complaint.

35. On or around June 23, 2022, Katherine Kusske began investigating Balow's complaint.

36. On or around July 18, 2022, Michele Hagel, a Medtronic human resources representative, informed Balow that the investigation was complete and said Medtronic had determined that there were no issues related to the reduction of Balow's commission.

37. On or about August 29, 2022, Balow met with Lisa Jones, Medtronic's Employee Relations Manager, as part of an investigation into Balow. Balow was not informed of the subject of the investigation.

38. This investigation into Balow was initiated by Pan in retaliation for his complaints of discrimination that were benefitting Pan and whistleblowing activity that identified Pan as engaging in illegal or unauthorized activities.

39. Jones reported no knowledge of Balow's complaints about Pan and their resolution or lack thereof.

40. On or about October 13, 2022, Balow was informed that the investigation into himself was nearing completion, but was still not informed of the subject or allegations being investigated.

41. On or about October 21, 2022, Balow was informed that the investigations into Pan and himself were completed.

42. Balow was not informed of any outcome of Medtronic's investigation into Pan other than that Medtronic personnel would be meeting with her separately.

43. Balow was informed that Medtronic allegedly substantiated Pan's claims that

Balow had made "inappropriate comments."

44. On or about November 2, 2022, Balow learned that Pan was no longer with Medtronic.

45. Pan's sudden departure dramatically impacted the business in Balow's region, as there were no sales personnel that could cover Pan's responsibilities other than Balow.

46. Despite this need for coverage, in or about September 2022, Medtronic hired Lauren Ndoka. Even though Ndoka is subject to a non-compete agreement that prevents her coverage of Pan's responsibilities, Ndoka has been assigned to share Balow's presently divided territory.

47. Since Pan's departure and Ndoka's hire, Balow still has not been restored to his former sales territory and commission rates.

48. On November 16, 2022, Balow received from John McLeod, the Vice President of Sales for Pain & Interventions based in Minneapolis, Minnesota, a "Final Written Warning." This memorandum specified a number of allegations against Balow, including a number of text messages alleged to be "inappropriate comments."

49. Upon Balow's further examination of the specified instances in the written warning, Balow discovered that all but one were taken out of context to dishonestly construe Balow as having engaged in sexual harassment.

50. This investigation was a sham initiated and concluded on dishonest bases in retaliation for Balow having engaged in protected activity.

51. Medtronic's stated reasons for Balow's commission being cut and his territory being split with Pan are pretext for illegal age and gender discrimination and retaliation.

52. Balow has suffered damages because of Medtronic's illegal actions, and he will

continue to sustain damages into the foreseeable future.

## COUNT I
### Minnesota Whistleblower Act (MWA)
### Minn. Stat. §§181.931–.937
### Retaliation

53. Balow incorporates the allegations in the foregoing paragraphs.

54. The MWA prohibits retaliation against employees for making good-faith reports to their employers of the employer's violations of any state or federal law, rule, or regulation.

55. Balow is an employee as defined in Minn. Stat. §181.931, subd. 2.

56. Medtronic is an employer as defined in Minn. Stat. §181.931, subd. 3.

57. The MWA defines "good faith" as "conduct that does not violate section 181.932, subdivision 3." Minn. Stat. § 181.931 subd. (4). Subdivision 3 does not permit an employee to make statements or disclosures knowing they are false or are in reckless disregard of the truth.

58. Medtronic had a duty under the Minnesota Whistleblower Act to refrain from taking retaliatory actions against employees who take lawful actions in furtherance of reporting violations of laws and regulations.

59. In or about March 2021, Balow became aware that Pan was handling equipment in a sterile environment during procedures and unlawfully practicing medicine, in violation of MINN. STAT. § 147.081.

60. Balow engaged in protected activity under the MWA in or about May 2021, when he reported Pan's breach of Medtronic policy and unlawful practice of medicine to Krista Harrison.

61. Balow engaged in further protected activity under the MWA on or about May 16, 2022, when he submitted a written complaint to Carol Surface, Medtronic's chief human resource officer, and Ivan Fong, general counsel and senior vice president.

8

62. Balow's reports regarding Pan's conduct were made in good faith, as he believed that his observations were truthful when he reported his concerns to Medtronic and Balow did not act recklessly.

63. After Balow engaged in protected conduct by disclosing to Harrison Pan's illegal practice of medicine, Medtronic reduced Balow's commission and salary, initiated a sham investigation of his own conduct, and issued a "Final Written Warning" based on deliberately misleading findings.

64. Balow's complaints were a motivating factor in Medtronic's decision to reduce Balow's commission and salary, to initiate the sham investigation, to reach the contrived conclusions of that investigation, and to issue the "Final Written Warning."

65. The practices complained of above have adversely affected Balow's status as an employee.

66. The unlawful employment practices described above were intentional and were performed by Medtronic with malice or reckless indifference to the anti-retaliation laws that protect Balow.

67. Balow has suffered and continues to suffer damages because of Medtronic's retaliation.

68. For Medtronic's unlawful retaliation against Balow, he is entitled to such legal or equitable relief as will effectuate the purposes of the MWA, including, but not limited to, reasonable attorneys' fees, compensatory damages, punitive damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, reinstatement, consequential damages, and any other relief that furthers the purpose of the MWA.

## COUNT II
**Minnesota Human Rights Act (MHRA)**

9

Minn. Stat. § 363A.15 *et seq.*
Discrimination Based on Age

69. Balow incorporates the allegations in the foregoing paragraphs.

70. Balow is an employee as defined in Minn. Stat. §363A.03, subd. 15.

71. Medtronic is an employer as defined in Minn. Stat. §363A.03, subd. 16.

72. Balow is a member of a protected class under the MHRA as he is 50 years old.

73. Medtronic discriminated against Balow because of his age.

74. Medtronic treated Pan, Balow's younger colleague, more favorably than Balow by increasing her commissions while reducing Balow's commissions.

75. Medtronic's stated and forthcoming reasons for reducing Balow's commissions are false and pretextual for unlawful age discrimination.

76. Medtronic engaged in the unlawful conduct described above intentionally and with reckless disregard for the rights of Balow.

77. Balow has suffered and continues to suffer damages because of Medtronic's discrimination.

78. For Medtronic's unlawful discrimination against Balow, he is entitled to such legal or equitable relief as will effectuate the purposes of the MHRA, including, but not limited to, reasonable attorneys' fees, compensatory damages, punitive damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, reinstatement, consequential damages, and any other relief that furthers the purpose of the MHRA.

**COUNT III**
Minnesota Human Rights Act (MHRA)
Minn. Stat. § 363A.15 *et seq.*
**Discrimination Based on Gender**

79. Balow incorporates the allegations in the foregoing paragraphs.

80. Balow is an employee as defined in Minn. Stat. §363A.03, subd. 15.

81. Medtronic is an employer as defined in Minn. Stat. §363A.03, subd. 16.

82. Balow is a member of a protected class under the MHRA as he is male.

83. Medtronic discriminated against Balow because of his gender.

84. Medtronic treated Pan, Balow's female colleague, more favorably than Balow by increasing her commissions while reducing Balow's commissions.

85. Medtronic's stated and forthcoming reasons for reducing Balow's commissions are false and pretextual for unlawful gender discrimination.

86. Medtronic engaged in the unlawful conduct described above intentionally and with reckless disregard for the rights of Balow.

87. Balow has suffered and continues to suffer damages because of Medtronic's discrimination.

88. For Medtronic's unlawful discrimination against Balow, he is entitled to such legal or equitable relief as will effectuate the purposes of the MHRA, including, but not limited to, reasonable attorneys' fees, compensatory damages, punitive damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, reinstatement, consequential damages, and any other relief that furthers the purpose of the MHRA.

### COUNT IV
### Virginia Whistleblower Protection Act (VWPA)
### (Pled in the alternative to Count I)
### Va. Code Ann. § 40.1-27.3
### Retaliation

89. Balow incorporates the allegations in the foregoing paragraphs.

90. The VWPA prohibits retaliation against employees for making good-faith reports to their employers of the employer's violations of any state or federal law, rule, or regulation.

91. Balow is an employee as defined by Va. Code Ann. § 40.1-2.

92. Medtronic is an employer as defined by Va. Code Ann. § 40.1-2.

93. Medtronic had a duty under the Virginia Whistleblower Protection Act to refrain from taking retaliatory actions against employees who take lawful actions in furtherance of reporting violations of laws and regulations.

94. In or about March 2021, Balow became aware that Pan was handling equipment in a sterile environment during procedures and unlawfully practicing medicine, in violation of Virginia Code Ann. 54.1-2902 and Maryland Health Occupations Code Ann. § 14-601.

95. Balow engaged in protected activity under the VWPA in or about May 2021, when he reported Pan's breach of Medtronic policy and unlawful practice of medicine to Krista Harrison.

96. Balow engaged in further protected activity under the VWPA on or about May 16, 2022, when he submitted a written complaint to Carol Surface, Medtronic's chief human resource officer, and Ivan Fong, general counsel and senior vice president.

97. Balow's reports regarding Pan's conduct were made in good faith, as he believed that his observations were truthful when he reported his concerns to Medtronic and Balow did not act recklessly.

98. After Balow engaged in protected conduct by disclosing to Harrison Pan's illegal practice of medicine, Medtronic reduced Balow's commissions and salary, initiated a sham investigation of his own conduct, and issued a "Final Written Warning" based on deliberately misleading findings.

99. Balow's complaints were a motivating factor in Medtronic's decision to reduce Balow's commissions and salary, to initiate the sham investigation, to reach the contrived

conclusions of that investigation, and to issue the "Final Written Warning."

100. The practices complained of above have adversely affected Balow's status as an employee.

101. The unlawful employment practices described above were intentional and were performed by Medtronic with malice or reckless indifference to the anti-retaliation laws that protect Balow.

102. Balow has suffered and continues to suffer damages because of Medtronic's retaliation.

103. For Medtronic's unlawful retaliation against Balow, he is entitled to such legal or equitable relief as will effectuate the purposes of the VWPA, including, but not limited to, reasonable attorneys' fees, compensatory damages, punitive damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, reinstatement, consequential damages, and any other relief that furthers the purpose of the VWPA.

### COUNT VII
### Virginia Human Rights Act (VHRA)
### (Pled in the Alternative to Count II)
### Va. Code Ann. § 2.2-3900 *et seq.*
### Discrimination Based on Age

104. Balow incorporates the allegations in the foregoing paragraphs.

105. Balow is an employee as defined in Va. Code Ann. § 2.2-3905.

106. Medtronic is an employer as defined in Va. Code Ann. § 2.2-3905.

107. Balow is a member of a protected class under the VHRA as he is 50 years old.

108. Medtronic discriminated against Balow because of his age.

109. Medtronic treated Pan, Balow's younger colleague, more favorably than Balow by increasing her commissions while reducing Balow's commissions.

110. Medtronic's stated and forthcoming reasons for reducing Balow's commissions are false and pretextual for unlawful age discrimination.

111. Medtronic engaged in the unlawful conduct described above intentionally and with reckless disregard for the rights of Balow.

112. Balow has suffered and continues to suffer damages because of Medtronic's discrimination.

113. For Medtronic's unlawful discrimination against Balow, he is entitled to such legal or equitable relief as will effectuate the purposes of the VHRA, including, but not limited to, reasonable attorneys' fees, compensatory damages, punitive damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, reinstatement, consequential damages, and any other relief that furthers the purpose of the VHRA.

## COUNT VIII
### Virginia Human Rights Act (VHRA)
### (Pled in the Alternative to Count III)
### Va. Code Ann. § 2.2-3900 *et seq.*
### Discrimination Based on Gender

114. Balow incorporates the allegations in the foregoing paragraphs.

115. Balow is an employee as defined in Va. Code Ann. § 2.2-3905.

116. Medtronic is an employer as defined in Va. Code Ann. § 2.2-3905.

117. Balow is a member of a protected class under the VHRA as he is male.

118. Medtronic discriminated against Balow because of his gender.

119. Medtronic treated Pan, Balow's female colleague, more favorably than Balow by increasing her commissions while reducing Balow's commissions.

120. Medtronic's stated and forthcoming reasons for reducing Balow's commissions

are false and pretextual for unlawful gender discrimination.

121.    Medtronic engaged in the unlawful conduct described above intentionally and with reckless disregard for the rights of Balow.

122.    Balow has suffered and continues to suffer damages because of Medtronic's discrimination.

123.    For Medtronic's unlawful discrimination against Balow, he is entitled to such legal or equitable relief as will effectuate the purposes of the VHRA, including, but not limited to, reasonable attorneys' fees, compensatory damages, punitive damages, damages for humiliation and embarrassment, front and back pay, interest on all damages, reinstatement, consequential damages, and any other relief that furthers the purpose of the VHRA.

## **PRAYER FOR RELIEF**

Balow respectfully requests that he be awarded the following relief:

a.  Judgment against Defendant in an amount of any wages, salary, employment benefits, or other compensation denied or lost to Balow, including economic damages, and compensatory and punitive damages to be determined at trial;

b.  Compensatory damages in an amount up to three times the actual damages sustained;

c.  Re-employment, reinstatement, promotion, front pay, or other equitable relief;

d.  Pre-judgment interest;

e.  Interest due on unpaid wages;

f.  Reasonable attorneys' fees and costs of this litigation;

g.  Injunctive and declaratory relief;

h.  Reasonable expert witness fees; and

Any other relief that this Honorable Court deems just and proper to award.

## JURY DEMAND

Balow demands a jury for all issues proper to be so tried.

Date: March 27, 2023

Respectfully submitted,

*/s/ Charles A. Horowitz*
Charles Horowitz (MN #0294767)
Halunen Law
80 S. 8th Street, Ste. 1650
Minneapolis, MN 55402
(612) 615-4098 (telephone)
chorowitz@halunenlaw.com

R. Scott Oswald, *pro hac vice to be filed*
John T. Harrington, *pro hac vice to be filed*
The Employment Law Group, P.C.
1717 K St. NW, Ste. 1110
Washington, D.C. 20006
(202) 261-2806 (telephone)
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
tharrington@employmentlawgroup.com
*Counsel for Plaintiff*